**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| NGOZI POLE, |
| Defendant. |

Crim. Action No. 09-354 (EGS)

**MEMORANDUM OPINION AND ORDER**

On February 1, 2011, Defendant Ngozi Pole ("Mr. Pole") was convicted by jury of five counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of theft of government property worth more than $1,000 in violation of 18 U.S.C. § 641. *See* Verdict Form, ECF No. 54.[1] Mr. Pole appealed, and on December 20, 2013, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") remanded various claims of ineffective assistance of trial counsel, as well as the Court's restitution order, for further proceedings. *See United States v. Pole*, 741 F.3d 120, 124, 129 (D.C. Cir. 2013). The Court subsequently set a schedule for the parties to brief the issues that were remanded by the D.C. Circuit and scheduled an evidentiary hearing to take place on November 14, 2017. *See* Min. Order (May 26, 2017). Days before the evidentiary hearing was to

---

[1] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF page number, not the page number of the filed document.

commence, however, Mr. Pole submitted a notice to the Court updating his plan for witnesses and evidence for the upcoming hearing, *see* Notice Regarding Nov. 14, 2017 Hearing, ECF No. 163; setting off a series of disputes between the parties regarding the proper scope of the evidentiary hearing and whether the Court had the authority to rule on certain of Mr. Pole's claims. *See, e.g.*, Joint Status Report, ECF No. 176.

Pending before the Court is Mr. Pole's motion for a new trial, ECF No. 139; Mr. Pole's supplement to his motion for a new trial, ECF No. 168; and Mr. Pole's petition for a writ of *coram nobis*, ECF No. 169. The Court's immediate task is to resolve the parties' disputes prior to proceeding with the evidentiary hearing in this case. Upon consideration of the motions, the responses, and replies and surreplies thereto, the supplements, the applicable law, and the entire record, the Court concludes that it may consider the entirety of Mr. Pole's motion for a new trial during the upcoming evidentiary hearing, but it shall not consider the contents of Mr. Pole's supplement as it was untimely filed. The Court also **DENIES** Mr. Pole's petition for a writ of *coram nobis*.

## I. Background

Following a ten-day jury trial in January 2011, Mr. Pole was convicted of five counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of theft of government property

worth more than $1,000 in violation of 18 U.S.C. § 641. *See* Verdict Form, ECF No. 54. The Court subsequently sentenced Mr. Pole to twenty months in prison, followed by three years of supervised release, and ordered him to pay $75,042.37 in restitution. *See* J., ECF No. 102. Mr. Pole began serving his sentence on July 27, 2012; *see* Second Consent Mot. to Modify Conditions of Release to Allow Travel, ECF No. 111 at 1; and on April 19, 2016, the Court granted his motion for early termination of supervised release, Minute Order (Apr. 19, 2016).

Mr. Pole appealed his conviction, challenging three evidentiary rulings and arguing that he received ineffective assistance of counsel and that the Court miscalculated restitution. *See Pole*, 741 F.3d at 124. The specific ineffective assistance claims Mr. Pole raised on appeal are:

> that [his] trial counsel should have (1) produced unredacted copies of Pole's budget memos; (2) "through documentary evidence and additional discovery or otherwise" demonstrated that "Pole routinely issued exit bonuses without specific chief of staff approval"; (3) "demonstrate[d] that [Mary Beth] Cahill[2] instructed Pole to spend the budget to zero, or to impeach her testimony that she did not do so"; and (4) attempted to impeach [Danica] Petroshius by introducing evidence about employee bonuses she denied issuing and by "question[ing] Petroshius regarding a memoranda

---

[2] Mr. Pole served as the late Senator Edward M. Kennedy's Washington, D.C. office manager from 1998 to 2007. During that time, Mr. Pole served under four chiefs of staff—Gerard Kavanaugh, Mary Beth Cahill, Danica Petroshius, and Eric Mogilnicki—and one interim chief of staff. *See Pole*, 741 F.3d at 182.

from Pole" containing budgetary information she claimed never to have received.

*Id.* at 126. On December 20, 2013, the D.C. Circuit "reject[ed] Pole's evidentiary challenges, remand[ed] Pole's ineffective assistance claims, and vacate[d] and remand[ed] the restitution order for further proceedings consistent with [its] opinion." *Id.* at 129.

On February 19, 2014, this Court issued an Order directing the parties to file a joint status report, including recommendations for how to proceed. Minute Order (Feb. 19, 2014). Following multiple continuances to allow defense counsel additional time to obtain documents, Mr. Pole filed a motion for a new trial on May 4, 2015. *See* Def.'s Mot. New Trial, ECF No. 139. In Mr. Pole's motion, he raised the ineffective assistance of trial claims that had been remanded by the D.C. Circuit, as well as several new claims of ineffective assistance of trial counsel. The ineffective assistance claims asserted for the first time in the motion are that trial counsel (1) should have presented a good faith defense but did not; (2) failed to object to the admission of Mr. Pole's offer to repay unapproved bonuses; (3) failed to object to the admission and use of Mr. Pole's oath of office; (4) failed to call James McCarthy to testify that he did not consider Mr. Pole a friend; and (5) failed to call Kathleen Kruse to demonstrate that she informed Danica Petroshius of a large bonus she received. *See id.* The government filed its

4

opposition to Mr. Pole's motion for a new trial on June 15, 2015, *see* Gov't's Opp'n Mot. New Trial, ECF No. 142; and Mr. Pole filed his reply brief on August 3, 2015. *See* Def.'s Reply New Trial, ECF No. 144. The government filed a surreply regarding *United States v. Udo*, 795 F.3d 24 (D.C. Cir. 2015), on May 3, 2016.

The Court scheduled an evidentiary hearing on Mr. Pole's motion for a new trial on November 14, 2017, *see* Min. Order (May 26, 2017); and the parties submitted a joint status report on October 18, 2017 regarding the scope of the hearing, including the parties' lists of exhibits and the anticipated witnesses to be called, *see* Joint Status Report, ECF No. 159. However, on November 10, 2017, Mr. Pole filed a notice to the Court updating his plan for witnesses and evidence for the upcoming hearing. *See* Notice Regarding Nov. 14, 2017 Hearing, ECF No. 163. The notice informed the Court that Mr. Pole "anticipate[d] calling one or more of the following additional witnesses: Adrian St. Hill (co-counsel with Rudolph Acree at Mr. Pole's trial), Deborah Mayer (the lead prosecutor at trial), Shawn Allen (defense investigator), and Mr. Pole." *Id.* at 1. These additional witnesses had not been identified in the October 18, 2017 joint status report. *Id.* The government filed its response to the notice the following day. *See* Gov't's Response, ECF No. 164. In its response, the government stated that it had "reason

5

to believe that one or more of the additional witnesses the
defense seeks to call at the evidentiary hearing would testify
about matters related to ineffective assistance of counsel
claims asserted for the first time on remand." *Id.* at 1. The
government argued that those claims not raised on direct appeal
are outside the scope of the remand and should be dismissed. *Id.*
at 3. Further, Mr. Pole could not raise these newly asserted
ineffective assistance of counsel claims in a collateral attack
under 28 U.S.C. § 2255 because his supervised release had been
terminated and he was no longer in custody. *Id.* at 5. Mr. Pole
filed his reply to the government's response on November 21,
2017. *See* Def.'s Reply Gov't's Response, ECF No. 165.

On January 16, 2018, "[p]ending a decision from the Court"
on Mr. Pole's November 10, 2017 notice (ECF No. 163), Mr. Pole
filed a supplement to his motion for a new trial based on newly
discovered evidence of prosecutorial misconduct. *See* Def.'s
Suppl. Mot. New Trial, ECF No. 168. According to Mr. Pole, the
"newly discovered evidence" demonstrated prosecutorial
misconduct warranting a new trial because the evidence "strongly
suggests that the government made misrepresentations to the
Court and to Mr. Pole's trial counsel – both before and during
the trial – about its knowledge of material exculpatory
information" within budgetary memoranda that were used at trial.
*Id.* at 1-2. Mr. Pole simultaneously filed a petition for a writ

of *coram nobis* "on the grounds that he received constitutionally
ineffective assistance of counsel in violation of the Sixth
Amendment and/or that the government committed prosecutorial
misconduct before and during Mr. Pole's trial." *See* Def.'s Pet.
Writ Coram Nobis, ECF No. 169. The government filed its
opposition to Mr. Pole's supplemental motion and petition for a
writ of *coram nobis* on February 21, 2018. *See* Gov't's Opp'n
Suppl. Mot. & Coram Nobis, ECF No. 170. Mr. Pole filed his reply
on March 14, 2018. Def.'s Reply Suppl. Mot. & Coram Nobis, ECF
No. 173.

On December 18, 2019, Mr. Pole filed a supplemental notice
in support of his motion for a new trial and petition for writ
of *coram nobis* including additional claims that he "continues to
suffer adverse consequences as a result of [his] felony
conviction." *See* Def.'s Suppl. Notice, ECF No. 174.

On February 26, 2020, the parties submitted a joint status
report to the Court requesting a status conference in order to
determine the parameters of the evidentiary hearing on Mr.
Pole's motions. *See* Joint Status Report, ECF No. 176. The Court
declined to schedule a status conference, *see* Min. Order (Jan.
24, 2021); and instead addresses the parties' arguments below.

## II. Analysis

### A. The Court May Consider the Merits of Mr. Pole's Motion for a New Trial

The government first argues that Mr. Pole's additional claims that were not raised on direct appeal are barred by the mandate rule doctrine because they are outside the scope of the D.C. Circuit's remand. *See, e.g.*, Gov't's Response, ECF No. 164 at 3-5. The government also argues that the Court should deem Mr. Pole's additional claims waived[3] because Mr. Pole could have raised them on his initial appeal, but did not.[4] *Id.* Mr. Pole, in

---

[3] Though the government's second objection and Mr. Pole's argument in opposition are framed as concerning "waiver," they appear to be more properly considered as "forfeiture" arguments. *See Owens v. Republic of Sudan*, 924 F.3d 1256, 1259 (D.C. Cir. 2019) (considering "the plaintiffs' contention that Sudan forfeited its arguments because it failed to raise them in its initial appeal to this court and before the D.C. Court of Appeals"). As the D.C. Circuit has explained, "[a]lthough jurists often use the words interchangeably,  . . . waiver is the intentional relinquishment or abandonment of a known right, . . . and forfeiture is the failure to make the timely assertion of a right." *Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017) (citations and quotation marks omitted)); *see also Freytag v. C.I.R.*, 501 U.S. 868, 895 n.2 (1991) (Scalia, J. concurring in part and concurring in the judgment) ("[Waiver and forfeiture] are really not the same, although our cases have so often used them interchangeably that it may be too late to introduce precision."). However, because the parties use the word "waiver" throughout their briefing, the Court shall use both waiver and forfeit interchangeably.

[4] While the government does not distinguish between its "mandate rule" argument and its "waiver" argument, the two doctrines involve separate, though related, concerns and analyses. *See, e.g.*, *United States v. Slatten*, 395 F. Supp. 3d 45, 82 (D.D.C. 2019) (explaining that "even if [defendant] could dodge waiver, he would run into the mandate rule"); *Mowrer v. U.S. Dep't of Transp.*, 326 F.R.D. 350, 353 (D.D.C. 2018) (finding that

response, does not directly dispute that the mandate rule or waiver doctrine, if applied, would preclude this Court's consideration of his newly asserted claims. Def.'s Reply, ECF No. 165 at 2, 6-7; *see also id.* at 3 (describing the motion for a new trial as "addressing the claims remanded by the D.C. Circuit, as well as several additional ineffective assistance of counsel claims"). Rather, Mr. Pole argues that the government waived its objections by "(1) failing to ever request a ruling from the Court that the claims should be dismissed as outside the scope of the remand; and (2) addressing Mr. Pole's claims on the merits." Def.'s Reply, ECF No. 165 at 2.

For the reasons discussed below, the Court concludes that it may consider the merits of Mr. Pole's motion for a new trial.

### 1. Mr. Pole's Newly Raised Ineffective Assistance of Counsel Claims Are Not Barred by the Mandate Rule

As a threshold matter, with regard to whether the government has waived its mandate rule argument, the D.C. Circuit has made clear that "[u]nder the mandate rule, 'an inferior court has *no power or authority* to deviate from the mandate issued by an appellate court.'" *Indep. Petroleum Ass'n*

---

plaintiffs had not rebutted defendant's waiver argument in responding that their claim was not barred by the mandate rule); *cf. Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740 (D.C. Cir. 1995) ("The present case involves an application of waiver doctrine, not core law-of-the-case principles."). The Court will thus analyze the government's objection as two separate arguments.

*of Am. v. Babbitt*, 235 F.3d 588, 596-97 (D.C. Cir. 2001)

(quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)); *see also Am. Council of the Blind v. Mnuchin*, 977 F.3d 1 (D.C. Cir. 2020) (same). In other words, this Court simply "cannot deviate from the mandate issued by the Court of Appeals for the District of Columbia Circuit."[5] *Burns v. Levy*, No. 13-898 (CKK), 2019 WL 6465142, at *5 (D.D.C. Dec. 2, 2019). Thus, regardless of whether the government sufficiently raised its mandate rule argument within its opposition to Mr. Pole's motion for a new trial, this Court lacks the authority to alter or stray from the D.C. Circuit's direction on remand. *See Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337 (3d Cir. 1982) ("The district court is without jurisdiction to alter the mandate of this court on the

---

[5] "Although the D.C. Circuit has not had an opportunity to address the question, decisions from this Court and from other circuits recognize that a district court may . . . permit re-litigation of a question previously resolved in an appellate decision, but only in 'extraordinary circumstances.'" *United States v. Trabelsi*, No. 06-cr-89 (RDM), 2020 WL 1236652, at *8 (D.D.C. Mar. 13, 2020) (citing cases). In such circumstances, the party seeking reconsideration of an already decided issue would bear the burden of establishing: "(1) a dramatic change in controlling legal authority; (2) significant new evidence that was not earlier obtainable through due diligence but has since come to light; or (3) [if] blatant error from the prior . . . decision would result in serious injustice if uncorrected." *Id.* Here, Mr. Pole does not argue that any "exception" to the mandate rule applies in his case. Thus, even if the Court determined that it had the authority to reopen issues already decided in such "extraordinary circumstances," Mr. Pole has not met his "heavy burden" to establish that such circumstances exist. *Id.*

basis of matters included or includable in defendants' prior appeal."); *United States v. Trabelsi*, No. 06-cr-89 (RDM), 2020 WL 1236652, at *8 (D.D.C. Mar. 13, 2020) (noting that the mandate rule "*requires* a lower court to honor the decisions of a superior court in the same judicial system"); *see also United States v. Gabriel*, No. 02-cr-216 (JDB), 2005 WL 1060631, at *7 n.9 (D.D.C. May 4, 2005) ("[T]he question in this case is whether this Court has any authority under . . . the mandate rule to consider the issue of the 1986 convictions at all. It would expand the waiver of waiver rule beyond all recognition to conclude that a district court lacks the authority to consider its own authority to hear cases on remand."). In view of these constraints on its authority, the Court therefore shall proceed to the merits of whether the mandate rule bars this Court's consideration of Mr. Pole's newly asserted claims.

The mandate rule is "a 'more powerful version' of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case." *Indep. Petroleum Ass'n of Am.*, 235 F.3d at 597 (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 n.3 (D.C. Cir. 1996) (en banc)). The rule's scope extends to issues that were decided by the D.C. Circuit "either explicitly or by necessary implication." *United States v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997). "Unlike the doctrine of res judicata, . . . the . . .

'law of the case' doctrine does not seek to sweep under its coverage all possible issues arising out of the facts of the case." *Id.* Therefore, "it is entirely appropriate—and, in most cases in this [C]ircuit, necessary—to consult the opinion to interpret the mandate." *Id.* at 1043 n.7 (citing *City of Cleveland*, 561 F.2d at 347 n.25).

The D.C. Circuit's decision regarding Mr. Pole's ineffective assistance of trial counsel claims was straightforward. The D.C. Circuit noted that Mr. Pole had raised four specific ineffective assistance of counsel claims:

> that trial counsel should have (1) produced unredacted copies of Pole's budget memos; (2) "through documentary evidence and additional discovery or otherwise" demonstrated that "Pole routinely issued exit bonuses without specific chief of staff approval"; (3) "demonstrate[d] that Cahill instructed Pole to spend the budget to zero, or to impeach her testimony that she did not do so"; and (4) attempted to impeach Petroshius by introducing evidence about employee bonuses she denied issuing and by "question [ing] Petroshius regarding a memoranda from Pole" containing budgetary information she claimed never to have received.

*Pole*, 741 F.3d at 126. Based on the record before it, the D.C. Circuit then concluded that Mr. Pole had "alleged errors that, taken together, qualify as 'colorable,' requiring remand." *Id.* at 127. The court explained that "given Pole's allegations, and given that the trial record neither indicates why trial counsel made particular strategic decisions nor refutes the possibility

that Pole suffered prejudice," it was the "safest course of
action . . . to allow the district court to address the claims—
and the government's responses—in the first instance." *Id.*

The government contends that because the D.C. Circuit
explicitly remanded the four enumerated ineffective assistance
of counsel claims for this Court's consideration, the Court
"does not have the authority to decide" Mr. Pole's claims that
were not raised on the initial appeal. Gov't's Opp'n, ECF No.
164 at 3-4. The Court disagrees.

While the D.C. Circuit remanded Mr. Pole's four ineffective
assistance of counsel claims, the court never had the
opportunity to decide, or even consider, the additional
arguments that Mr. Pole now brings. As explained above, for a
court to be bound by a mandate, "the issue must actually have
been decided 'either expressly or by necessary implication' on
that appeal." *Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C.
Cir. 1983) (quoting *City of Cleveland*, 561 F.2d at 348). "The
mere fact that it could have been decided is not sufficient to
foreclose the issue on remand." *Id.* Nor does the text and spirit
of the D.C. Circuit's mandate preclude this Court from
considering issues not inconsistent with the court's decision.
*See Pole*, 741 F.3d at 129 (remanding "for further proceedings
consistent with this opinion"). Rather, the "goal" of the
mandate rule is to "achieve finality, making it possible for

13

appellate courts to do their job," *Am. Council of the Blind*, 977
F.3d at 7 (finding that the "purpose of the mandate rule"
supported a "narrow reading" of the court's opinion); and
consideration of Mr. Pole's newly asserted claims does not
disrupt the D.C. Circuit's holdings, *see Owner-Operator Indep.
Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 316 F. Supp. 3d
201, 206 (D.D.C. 2018) (finding, after the D.C. Circuit had
remanded plaintiffs' "damages claims" under the Administrative
Procedure Act and Fair Credit Reporting Act, that the mandate
rule did not preclude plaintiffs from amending their complaint
to add an additional Privacy Act claim).

The government's argument that *United States v. Whren*, 111
F.3d 956 (D.C. Cir. 1997), controls is unpersuasive. In *Whren*,
the D.C. Circuit held that, "upon a resentencing occasioned by a
remand, unless the court of appeals expressly directs otherwise,
the district court may consider only such new arguments or new
facts as are made newly relevant by the court of appeals'
decision—whether by the reasoning or by the result." *Whren*, 111
F.3d at 960; *see also id.* (noting that under Federal Rule of
Criminal Procedure 52(b), the resentencing court could also
consider an issue belatedly raised if it rises to the level of
"plain error"). The court further explained that "[u]nder [its]
approach a defendant may argue at resentencing that the court of
appeals' decision has breathed life into a previously dormant

14

issue, but he may not revive in the second round an issue he allowed to die in the first." *Id.*

However, as is clear from the court's language, *Whren* explicitly governs remands for resentencing, and since the case was decided, the D.C. Circuit has consistently read *Whren* to apply only in that specific context. *See, e.g.*, *United States v. Brown*, 516 F.3d 1047, 1052 n.3 (D.C. Cir. 2008) ("Even if we had ordered a remand for resentencing [under *Whren*,] the district court might not have been able to consider Brown's argument regarding his arrest record."); *United States v. Johnson*, 331 F.3d 962, 965 (D.C. Cir. 2003) (explaining that *Whren* states "the standard governing remands for resentencing"); *see also United States v. Gabriel*, No. 02-cr-216 (JDB), 2005 WL 1060631, at *4 (D.D.C. May 4, 2005) ("The standard that a district court should follow in assessing the proper scope of resentencing on remand from a D.C. Circuit opinion was set out in *United States v. Whren* . . . ."). Moreover, the Court is unaware of any case—and the government supplies none—that purports to extend *Whren* to other contexts.

Accordingly, the Court finds that the mandate rule does not preclude it from considering Mr. Pole's newly raised ineffective assistance of counsel claims.

## 2. The Government Forfeited Its Forfeiture Argument

Second, the Court must address the government's argument that Mr. Pole has waived—or forfeited—his additional ineffective assistance of counsel arguments by not raising them on his initial appeal.

"[U]nder well-established law, a party forfeits a claim by failing to raise it below when the party 'knew, or should have known' that the claim could be raised." *Keepseagle v. Perdue*, 856 F.3d 1039, 1054 (D.C. Cir. 2017) (quoting *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1091 (D.C. Cir. 1984)). "The rule in this [C]ircuit is that litigants must raise their claims on their initial appeal and not in subsequent hearings following a remand." *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 717 (D.C. Cir. 1986) (citing *Laffey*, 740 F.2d at 1089-92). However, the D.C. Circuit has recognized that a party can forfeit the argument that an opposing party has forfeited a claim. *See, e.g., Solomon v. Vilsack*, 763 F.3d 1, 13 (D.C. Cir. 2014) ("By failing to argue forfeiture or a failure to properly plead the claims before the district court, the Secretary has—in a word—forfeited his forfeiture argument here."); *United States v. Delgado-Garcia*, 374 F.3d 1337, 1340 (D.C. Cir. 2004) (holding that, by failing to advance it, the government had "waived its waiver argument").

Here, the government has forfeited its forfeiture argument by not raising it in its opposition to Mr. Pole's motion for a new trial. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 755 (D.C. Cir. 2009) ("[Appellant] has forfeited its argument by failing to raise it in its opening brief." (citing *Sw. Airlines Co. v. Transp. Sec. Admin.*, 554 F.3d 1065, 1072 (D.C. Cir. 2009))). Indeed, the opposition includes no mention—not even a cursory one—of waiver or forfeiture. Instead, the first time the government raises its waiver argument is within its response to Mr. Pole's notice regarding the November 14, 2017 hearing—approximately two years after Mr. Pole first filed his motion for a new trial. *See* Response, ECF No. 164 at 3-4. Consequently, the government has forfeited this argument. *See Citizens for Responsibility & Ethics in Wash. v. Trump*, No. 17-cv-1228 (CRC), 2018 WL 8187206, at *1-2 (D.D.C. June 25, 2018) (finding that plaintiff had forfeited its arguments that it had failed to raise in its opposition to the motion to dismiss).

Thus, because the government has forfeited its forfeiture argument, the Court concludes that the forfeiture doctrine does not preclude review of Mr. Pole's claims on the merits.

### 3. The Government Forfeited Its Objection to the Timeliness of Mr. Pole's Motion for a New Trial

Pursuant to Federal Rule of Criminal Procedure 33, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Because Mr. Pole filed his motion for a new trial more than four years after the jury found him guilty on February 1, 2011, the motion was untimely. *See* Verdict Form, ECF No. 54 (filed February 1, 2011); Def.'s Mot. New Trial, ECF No. 139 (filed May 4, 2015). However, the Supreme Court in *Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam), has held that the time limitation contained in Rule 33(b)(2) is not jurisdictional and is instead a "claim-processing rule." 546 U.S. at 13. And because Rule 33(b)(2) is a claims-processing rule, "its protection is subject to forfeiture if not properly invoked by the Government." *United States v. Johnson*, 721 F. App'x 140, 142 (3d Cir. 2018); *see United States v. Laureano-Salgado*, 933 F.3d 20, 28 n.13 (1st Cir. 2019) ("[T]he government did not raise a timeliness objection [to defendants' new-trial motion] below. And it expressly chose not to press one in its appellate briefing. So we say no more about that subject."); *see also Menominee Indian Tribe of Wisc. v. United States*, 614 F.3d 519, 524 (D.C. Cir. 2010) ("Claim-processing rules typically permit

[tribunals] to toll the limitations period in light of special equitable considerations, . . . and their protection can be forfeited if the party asserting the rule waits too long to raise the point." (first alteration in original) (internal quotation marks and citation omitted)). Here, the government did not object to the timeliness of Mr. Pole's motion for a new trial until almost three years later in its opposition to Mr. Pole's supplement, after it had already addressed the merits of the motion. *See* Gov't's Opp'n Suppl. Mot. & Coram Nobis, ECF No. 170 at 2, 9-11. Its objection thus comes too late, *Citizens for Responsibility & Ethics in Wash.*, 2018 WL 8187206, at *1-2; and the Court shall consider the merits of Mr. Pole's motion.[6]

---

[6] Because Mr. Pole's motion does not purport to rest on newly discovered evidence, the Court analyzed the time restrictions listed under Federal Rule of Criminal Procedure 33(b)(2). However, even if the Court construed the motion as based on newly discovered evidence, the result would remain the same. "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). While *Eberhart* addressed only whether Rule 33(b)(2)'s time restriction was jurisdictional, other appellate courts have concluded that *Eberhart*'s reasoning also applies to Rule 33(b)(1) motions based on newly discovered evidence. *See, e.g.*, *United States v. Laureano-Salgado*, 933 F.3d 20, 28 n.13 (1st Cir. 2019); *United States v. Berry*, 624 F.3d 1031, 1042 (9th Cir. 2010). The Court likewise sees no reason to depart from *Eberhart*'s reasoning in applying it to Rule 33(b)(2)'s neighboring subsection.

### B. The Court Shall Not Consider the Merits of Mr. Pole's Supplement or His Petition for a Writ of *Coram Nobis*

In addition to his motion for a new trial, Mr. Pole filed a supplement to his motion on January 16, 2018, asserting that he had uncovered new evidence demonstrating prosecutorial misconduct during his trial, which he claimed warranted a new trial. Def.'s Suppl. Mot. New Trial, ECF No. 168 at 1. On the same day, Mr. Pole also filed a petition for a writ of *coram nobis*, incorporating by reference the arguments within his motion for a new trial and his supplement. *See* Def.'s Pet. Writ Coram Nobis, ECF No. 169.

The government opposed the supplement, arguing that Mr. Pole's claim of prosecutorial misconduct, raised for the first time in his supplement to his motion for a new trial, was "(1) waived because he failed to raise it on direct appeal or in a timely habeas petition when he could have done so[;] and (2) outside the scope of the mandate issued by the court of appeals." Gov't's Opp'n Suppl. Mot. & Coram Nobis, ECF No. 170 at 9. The government also argued that Mr. Pole's supplement to his motion for a new trial should be denied because "his 'supplemental' motion was not timely filed and the allegation of prosecutorial misconduct, even if true, would not constitute reversible error." *Id.* The government also argued that Mr. Pole

is barred from raising his prosecutorial misconduct claim through a petition for a writ of *coram nobis*. *Id.* at 17.

For the reasons discussed below, the Court concludes that Mr. Pole's supplement to his motion for a new trial is untimely filed under Federal Rule of Criminal Procedure 33(b)(1). The Court also denies Mr. Pole's petition for a writ of *coram nobis*.

### 1. Mr. Pole's Supplement to His Motion for a New Trial Is Untimely

The Court agrees that Mr. Pole's supplement is untimely, and Mr. Pole does not dispute that his supplement was filed after the three-year time limitation provided for in Federal Rule of Criminal Procedure 33(b)(1). *See generally* Def.'s Reply Suppl. Mot. & Coram Nobis, ECF No. 173. "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Here, Mr. Pole filed his supplement on January 16, 2018, which is more than three years after the jury returned its verdict on February 1, 2011. *See* J., ECF No. 54; Def.'s Suppl. Mot. New Trial, ECF No. 168. Because Mr. Pole's motion was filed beyond the rule's three-year limitations period and the government timely objected, his request for a new trial based on newly discovered evidence of prosecutorial misconduct is untimely. *See United States v. Robinson*, No. 16-98 (CKK), 2021 WL 2209403, at *7 (D.D.C. May 31, 2021) (finding that "the jury

verdict was rendered on August 10, 2017, more than three years before Defendant Robinson filed the pending motions, and therefore his requests for a mistrial or for a new trial are untimely"). The Court therefore shall not consider the merits of Mr. Pole's supplement.

### 2. Mr. Pole Is Not Entitled to *Coram Nobis* Relief[7]

The writ of *coram nobis* is "an extraordinary tool to correct a legal or factual error," *United States v. Denedo*, 556 U.S. 904, 912-13 (2009); and "provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241," *United States v. Newman*, 805 F.3d 1143, 1146 (D.C. Cir. 2015) (quoting *Chaidez v. United States*, 133 S. Ct. 1103, 1106 n.1 (2013)). The authority to grant a writ of *coram nobis* is "conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'" *Denedo*, 556 U.S. at 911 (quoting 28 U.S.C. § 1651(a)). The Supreme Court has made clear, however, that

---

[7] Mr. Pole's petition for a writ of *coram nobis* incorporates by reference both his motion for a new trial and his supplement. *See* Def.'s Pet. Writ Coram Nobis, ECF No. 169 at 4. Because the Court has found that it may consider Mr. Pole's ineffective assistance of counsel claims included within his motion for a new trial, the Court shall only address here Mr. Pole's additional prosecutorial misconduct claim included within his supplement.

"judgment finality is not to be lightly cast aside." *Denedo*, 556 U.S. at 916. Thus, *coram nobis* relief "is rarely available," *Zhenli Ye Gon v. Lynch*, 176 F. Supp. 3d 1, 3 (D.D.C. 2016); and may only be granted "under circumstances compelling such action to achieve justice," *United States v. Morgan*, 346 U.S. 502, 511 (1954). The petitioner bears the burden of overcoming a presumption that the challenged judicial proceedings were correct. *Id.* at 512.

"In American jurisprudence the precise contours of *coram nobis* have not been 'well defined,'" *Denedo*, 556 U.S. at 910 (quoting *Bronson v. Schulten*, 104 U.S. 410, 416 (1881)); and "the D.C. Circuit's precedent in this area is thin," *United States v. Williams*, 630 F. Supp. 2d 28, 32 (D.D.C. 2009). Nonetheless, courts in this District have applied a four-part analysis to guide consideration of *coram nobis* relief. The petitioner must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *United States v. Faison*, 956 F. Supp. 2d 267, 269 (D.D.C. 2013) (quoting *United States v. Hansen*, 906 F. Supp. 688, 692-93 (D.D.C. 1995)); *see also United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007); *Bereano v. United*

*States*, 706 F.3d 568, 576 (4th Cir. 2013); *Klein v. United States*, 880 F.2d 250, 254 (10th Cir. 1989); *see also United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (applying three-factor test requiring a *coram nobis* petitioner to "show that (1) 'there are circumstances compelling such action to achieve justice'; (2) 'sound reasons exist for failure to seek appropriate earlier relief'; and (3) 'the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ'" (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996))); *cf. Newman*, 805 F.3d at 1146 (taking note of the factors from *Riedl* and *Faison* but addressing only whether there was "fundamental error" in an ineffective assistance of counsel case where the defendant's counsel failed to advise him of the immigration consequences of pleading guilty).

Mr. Pole claims that he is entitled to *coram nobis* relief because new evidence suggests that "the government made misrepresentations to the Court and to Mr. Pole's trial counsel – both before and during trial – about its knowledge of material exculpatory information." Def.'s Suppl. Mot. New Trial, ECF No. 168 at 1; *see also* Def.'s Pet. Writ Coram Nobis, ECF No. 169 at 1-2. Specifically, Mr. Pole claims that he recently uncovered evidence that the law firm Foley & Lardner LLP–the firm that represented Mr. Pole prior to his trial–produced to the

government copies of unredacted budget memoranda in 2007, and that "many of these unredacted memos correspond with redacted memos that the government introduced as exhibits at Mr. Pole's trial–even though the government repeatedly told both the Court and Mr. Pole's trial counsel that it had no access to the unredacted versions." Def.'s Suppl. Mot. New Trial, ECF No. 168 at 2.

However, Mr. Pole has failed to show a valid reason for not raising his prosecutorial misconduct argument earlier. "To show that he has valid reasons for a delay in challenging a conviction, a defendant must show why he did not seek to appeal the conviction directly" or in a motion pursuant to 28 U.S.C. § 2255. *Faison*, 956 F. Supp. 2d at 270 (citing *Foont*, 93 F.3d at 80. The bar is high; *coram nobis* is not "a free pass for attacking criminal judgments long after they have become final." *Riedl*, 496 F.3d at 1004. Courts generally deny *coram nobis* petitions when "none of the material facts or applicable laws have changed since defendant's conviction." *See United States v. Lee*, 84 F. Supp. 3d 7, 9-10 (D.D.C. 2015) (rejecting defendant's petition because, "[a]s none of the material facts or applicable laws have changed since defendant's conviction, he could have raised it in his direct appeal (which he voluntarily dismissed), or in a timely-filed motion pursuant to 28 U.S.C. § 2255"); *United States v. Harrison*, No. 12-88 (ESH), 2015 WL 6406212, at

*2 (D.D.C. 2015) ("None of the material facts or applicable laws have changed since defendant's conviction, so he could have raised this argument in a direct appeal or in a timely-filed motion pursuant to 28 U.S.C. § 2255.").

Here, Mr. Pole does not dispute that none of the material facts or applicable laws have changed since his conviction. *See* Def.'s Reply Suppl. Mot. & Coram Nobis, ECF No. 173 at 8-9. As the government points out, his claim "derives from materials the defendant himself produced to the government through counsel more than 10 years ago," Gov't's Opp'n Suppl. Mot. & Coram Nobis, ECF No. 170 at 20; and Mr. Pole acknowledges in his supplement that his "trial counsel also may have received the unredacted memos [underlying the prosecutorial misconduct claim], either from the government in discovery or from Foley," Def.'s Suppl. Mot. New Trial, ECF No. 168 at 5 n.2. Moreover, Mr. Pole recognizes that "there is no explanation" for his failure to raise the claim earlier on appeal "other than the ineffective assistance of Mr. Pole's appellate counsel." Def.'s Reply Suppl. Mot. & Coram Nobis, ECF No. 173 at 9. Mr. Pole does not, however, bring an ineffective assistance of appellate counsel claim, and his acknowledgement that he and his appellate counsel "had everything they needed in order to raise" the claim on direct appeal, *id.* at 8-9, is fatal to his petition brought almost six years later, *see Kernan v. United States*, 2017 WL

5508776, at *7 (N.D.N.Y. Mar. 14, 2017) (denying *coram nobis* relief where, though the petitioner claims to have just learned the information, the record indicated that the petitioner knew of the alleged fundamental error prior to entering a plea agreement, yet waited more than four years after the Court entered judgment to seek relief); *Foont*, 93 F.3d at 80–81 (affirming district court's denial of *coram nobis* relief because Foont "knew or should have known since the time of his conviction, . . . of the facts underlying his current claim").

In addition, Mr. Pole has failed to show fundamental error. An error is fundamental if it is "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." *Faison*, 956 F. Supp. 2d at 271 (quoting *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001)).

Mr. Pole alleges that fundamental error is present because of two instances of prosecutorial misconduct: (1) that, in a joint request for supplemental jury instruction, "the government represented to the Court and to Mr. Pole's trial counsel that it had no access to the unredacted memos"; and (2) that, at trial, "when the government sought to prevent Mr. Pole from testifying about what was underneath the redactions, Deborah Mayer, the lead trial counsel for the government, told the Court: 'I've

27

never seen what's underneath [the redactions].'" Def.'s Suppl.
Mot. New Trial, ECF No. 168 at 3. Prosecutorial misconduct at
trial occurs when the "prosecutor's comments so infected the
trial with unfairness as to make the resulting conviction a
denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181
(1986) (internal quotation marks and citation omitted). Due
process is violated when a prosecutor deliberately misleads a
defendant to his prejudice. *See, e.g.*, *Mooney v. Holohan*, 294
U.S. 103, 112 (1935).

Here, even assuming that the government knew it had
unredacted copies of the budget memoranda, the government's
misrepresentations did not render the trial fundamentally unfair
or deprive Mr. Pole of due process.

First, the Court disagrees with Mr. Pole that the
government's statements made within the joint request for
supplemental jury instruction included misrepresentations to the
Court. In the joint request, the government stated that:

> 1. During the investigation of this matter,
> the United States requested documents from
> Senator Kennedy's office through the Senate
> Legal Counsel's Office.
>
> 2. In responding to the government's request
> for consensual production, Senate Legal
> Counsel produced a substantial number of
> documents which contained redactions, which
> are so marked on the documents. It is the
> government's understanding that the
> redactions were primarily of information which
> was nonresponsive, subject to a legal

> privilege (such as the "Speech and Debate"
> clause or attorney-client privilege), or in
> excess of what the Counsel'[s] office was
> authorized to disclose, due to the Senator's
> privacy concerns or the fact that the
> information was from an office's [sic] other
> than Senator Kennedy's and, accordingly, was
> beyond the scope of his consent.

Joint Request, ECF No. 40. The parties do not dispute that the
redacted budget memoranda at issue were produced by the Senate
in redacted form to the government, see Gov't's Opp'n Suppl.
Mot. & Coram Nobis, ECF No. 170 at 13 n.4; and the Court does
not otherwise view the statement as making any mis-
representations regarding whether the government knew of the
redactions' contents. In any event, the result of the joint
request was a direction to the jury "not to speculate or concern
themselves with the redacted information" and an explanation
"that the redactions were on the documents as provided and were
not created by either the government or the defense." Joint
Request, ECF No. 40 at 2. Such an instruction does not rise to
the level of a due process violation in this case. *See Greer v.
Miller*, 483 U.S. 756, 765 (1987) ("To constitute a due process
violation, the prosecutorial misconduct must be of sufficient
significance to result in the denial of the defendant's right to
a fair trial." (citation and internal quotation marks omitted)).

Second, the prosecutor's statement during a sidebar at
trial that she did not know what was under the redactions was

not so prejudicial as to deprive Mr. Pole of due process.
Following this sidebar, the Court instructed the jury that
anything that is redacted is "not a part of the evidentiary
record" and later added that "neither one side nor the other
redacted anything." Gov't's Opp'n Suppl. Mot. & Coram Nobis, ECF
No. 170 at 14. And though "the Court did not instruct [Mr. Pole]
that he could not testify about the redactions, when asked by
Pole's trial counsel if he (defense counsel) should instruct his
client not to talk about the redactions, the Court told him he
could talk to his client about that at the break." *Id.* Similar
to the Court's conclusion above, the Court does not find that
its jury instruction following the sidebar rendered the trial
fundamentally unfair.

Third, the D.C. Circuit has already found that any error in
the Court not allowing Mr. Pole to testify about the redacted
contents of the budget memoranda at trial was "harmless." *Pole*,
741 F.3d at 125. In reviewing Mr. Pole's argument on appeal to
the Court's ruling, the D.C. Circuit held that, "even if, as
Pole insists, that error was of 'constitutional dimension,' 'it
appears beyond a reasonable doubt that the error complained of
did not contribute to the verdict obtained.'" *Id.* (quoting
*United States v. Powell*, 334 F.3d 42, 45 (D.C. Cir. 2003)). The
court explained that:

> Pole was allowed to testify that he kept
> chiefs of staff informed about budgetary
> matters and in fact did testify that he "let
> Ms. Cahill know that the surplus numbers were
> high." Thus, if the jury found that Pole
> generally lacked credibility, it would have
> had no reason to believe his assertions about
> what lay under the redactions; if the jury
> found Pole generally credible, it would have
> learned nothing new from the excluded
> testimony.

*Id.* The Court thus cannot disturb the D.C. Circuit's holding on this issue.

Accordingly, the Court also declines to issue a writ of *coram nobis* on the ground that Mr. Pole has failed to show error "of the most fundamental character." *See Hansen*, 906 F. Supp. at 692-93.

## III. Conclusion

For the reasons stated above, the Court concludes that it may consider the entirety of Mr. Pole's motion for a new trial during the upcoming evidentiary hearing, but it shall not consider the contents of Mr. Pole's supplement as it was untimely filed. The Court also **DENIES** Mr. Pole's petition for a writ of *coram nobis*.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **December 7, 2021**